## AMENDED COMPLAINT

1.) PARTIES TO THIS ACTION:

        A.) GARY TIPTON #764382
           WCI
           P.O BOX 120
           LEBANON, OHIO 45036

        B.)

           1.) ANNETTE CHAMBERS-SMITH, DIRECTOR
           2.) JULIE HENSLEY, HCA
           3.) J. SLONE, CNA
           4.) KENDRA NEWLAND, CNA
           5.) JASON HUGHES, RN
           6.) ASHLEY LUCAS, RN
           7.) TIM MCCONNAHAY, WARDEN
           8.) URIAH MELTON
           9.) J.W WINDOM, CAPTAIN
           10.) OFFICER CLARK
           11.) OFFICER PAYNE

2.) GARY TIPTON DOES HAVE A RELATED CASE IN UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF OHIO. (2:22-CV-02854)

3.) GARY TIPTON HAS EXHAULSTED HIS ADMINISTRATIVE REMEDIES (SEE EXHIBIT #1)

EIGHTH AMENDMENT:     <u>CLAIMS</u>

    1.) DENIAL OF MEDICAL TREATMENT FOR SERIOUS MEDICAL NEEDS

        A.) JULIE HENSLEY, HCA
        B.) J. SLONE, CNA
        C.) KENDRA NEWLAND, CNA
        D.) ASHLEY LUCAS, RN

2

E.) JASON HUGHES, RN
F.) OFFICER CLARK

2.) EXCESSIVE / UNDOCUMENTED USE OF FORCE
     A.) J.W WINDOM

3.) DELIBERATE INDIFFERENCE:

     A.) JULIE HENSLEY, HCA
     B.) J. SLONE, CNP
     C.) JASON HUGHES, RN
     D.) KENDRA NEWLAND, CNP
     E.) ASHLEY LUCAS, RN
     F.) J.W WINDOM, CAPTAIN

4) CRUEL AND UNUSUAL PUNISHMENT

     A.) ALL NAMED DEFENDANTS

5) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

     A.) ALL NAMED DEFENDANTS

6) GROSS NEGLIGENCE: WILLFUL, WANTON AND RECKLESS
     NEGLIGENCE

     A.) ALL NAMED DEFENDANTS

7) SUPERVISOR LIABILITY: FAILURE TO TRAIN, INVESTIGATE
     AND ENFORCE POLICIES

     A.) JULIE HENSLEY, HCA
     B.) TIM MCCONNAHAY, WARDEN
     C.) ANNETTE CHAMBERS-SMITH, DIRECTOR
     D.) URIAH MELTON

FOURTEENTH AMENDMENT:
     1.) PROCEDURAL DUE PROCESS
        A.) ALL NAMED DEFENDANTS

FIRST AMENDMENT:

    1.) RETALIATION, INTIMIDATION AND THREATS

        A.) JULIE HENSLEY, HCA
        B.) J.W WINDOM, CAPTAIN
        C.) URIAH MELTON

  \* ALL DEFENDANTS WILL BE SUED IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES.

## FACTS OF THIS CASE

1.) ON OR ABOUT 8TH DAY OF FEBRUARY, 2022, GARY TIPTON (HEREINAFTER WILL BE REFERRED TO AS "TIPTON" WHILE INCARCERATED AT MANSFIELD CORRECTIONAL INSTITUTE, ASKED TO BE PLACED ON SUICIDE WATCH DUE TO A MENTAL HEALTH CRISIS, AND VERY DEEP DEPRESSION. TIPTON ATTEMPTED SUICIDE BY LACERATING HIS ABDOMEN AND INSERTING FORIEGN BODY (RAZOR BLADES). TIPTON REQUIRED EMERGENCY TRANSPORT BY AMBULANCE TO OHIO STATE UNIVERSITY WEXNER TO UNDERGO EMERGENCY SURGERY. TIPTON HAS A VERY LONG INTENSIVE MENTAL HEALTH HISTORY WITH SUICIDAL TENDENCIES AND SELF INJURIOUS BEHAVIORS, TIPTON IS ON MANDATED MEDICATIONS TO WORK WITH THESE ISSUES.

2.) ON OR ABOUT 8TH DAY OF FEBRUARY, 2022 WHILE AT OHIO STATE UNIVERSITY WEXNER MEDICAL CENTER (HEREINAFTER WILL BE REFERRED TO AS "OSUWMC") RECOVERING FROM SURGERY, TIPTON WAS ASSIGNED A CONSTANT WATCH OFFICER, AND PLACED ON 8TH FLOOR PRISON WARD AT "OSUWMC". TIPTON WAS PLACED ON AT-RISK SUICIDE PRECAUTIONS, AND CONSTANT WATCH BY O.D.R.C. THE ASSIGNED OFFICE IS DESIGNATED TO SIT A FEW FEET FROM TIPTON, AND DOCUMENT TIPTON'S EVERY MOVE IN 15 MINUTE INCRIMENTS.

3.) OSUWMC, AND FRANKLIN MEDICAL CENTER (HEREINAFTER WILL BE REFERRED TO AS "FMC", ITS EMPLOYEES AGENTS AND RESIDENTS ALL HAD COMPLETE KNOWLEDGE OF TIPTONS LONG HISTORY WITH INSERTING FORIEGN OBJECTS INTO HIS ABDOMEN. OSUWMC HAS HAD

To remove paperclips, breadties, razors, rust. Tipton has had more than fourteen exploration surgeries to remove these objects since 2017. Tipton is automatically placed in canvas four-point restraints upon admissions to emergency department. It is not like "OSUWMC" and "FMC" employees, agents and residents doesn't know Tipton very well and his mental health diagnosis. It is Ohio Department of Rehabilitation and Corrections (hereinafter will be referred to as "ODRC"), and "FMC" constant watch officers to watch and document Tipton's every move, and to ensure Tipton does not come into contact with anything to further harm himself or others, unless the act of gross negligence is committed.

4) Once about 5th day of February, 2022 while at "OSUWMC" (in a related case 2:22-CV-02854) Nurse Jane Doe, RN of "OSUWMC" came into Tipton's hospital room to get him settled in, hooked up to monitors, and draw his blood. Nurse Jane Doe had in her possession 4.5 cm catheter tipped hyperdermic needle to draw blood, or to transfer blood from tubes. She also had IV tubes, and fluids. Tipton was on at-risk precautions, and constant watch with "FMC" prison official right next to him. Tipton made numerous threats to kill himself, he repeatedly asked to speak to mental health.

Nurse Jane Doe asked Tipton when he was going to stop coming back for same thing, expressing her biased nature toward Tipton, saying "everyone is tired of seeing him". Tipton only defended himself by saying "he only needs help, mentally," Nurse Jane Doe stated that eventually "OSUWMC" was going to stop helping". The conversation got heated and Nurse Jane Doe got upset, recklessly and willfully walked out Tiptons room leaving a 4.5 cm pinkish catheter tipped hyperdermic needle laying next to a patient who is very known for inserting foreign objects into abdominal cavity, who was just making threats to kill himself, who just recieved surgery to remove foreign body. She recklessly left Tipton's room without properly disposing of sharps/biohazards, which a box is feet away from Tipton's bed but instead she expressed her biased nature and with personal prejudice she ignored her duties as a nurse to properly dispose of hospital equipment and follow at-risk policies of "OSUWMC".

5.) ON OR ABOUT 11TH DAY OF FEBRUARY, 2022 WHILE STILL AT "OSUWMC" AFTER NUMEROUS THREATS TO KILL HIMSELF AND REQUESTING TO SPEAK TO "OSUWMC" MENTAL HEALTH PSYCH. TEAM, ONCE THOSE THREATS, AND REQUEST WERE IGNORED AND DENIED, TIPTON RESULTED TO HIS SUICIDAL WAYS AND INSERTED THE NEEDLE INTO HIS SURGICALLY REPAIRED ABDOMINAL WOUND.

6.) ON OR ABOUT 12TH DAY OF FEBRUARY, 2022 AT APPROX. 6AM DR. JOHN DOE, MD AT "OSUWMC" WAS MAKING AM ROUNDS. TIPTON ADVISED HIM THAT HE WAS SUICIDAL AND NEEDED TO SPEAK TO MENTAL HEALTH PYSCH TEAM. TIPTON ADVISED DR. JOHN DOE WHILE HE EXAMINED TIPTON'S ABDOMINAL WOUND THAT HE INSERTED THE NEEDLE INTO HIS WOUND. DR. JOHN DOE, MD IGNORED TIPTON'S STATEMENT AND WALKED OUT ROOM. NO X RAY WAS ORDERED.

7.) ON OR ABOUT 12TH DAY OF FEBRUARY, 2022 WHILE BEING DISCHARGED TIPTON ADVISED "OSUWMC" EMPLOYEE'S, AGENTS AND ITS RESIDENTS THAT HE TOLD DR. JOHN DOE, MD THAT HE AGAIN INSERTED A FORIEGN OBJECT INTO HIS ABDOMEN. THAT REQUEST WAS ALSO IGNORED, TIPTON WAS STRIP SEARCHED, AND DRESSED IN A ORANGE JUMPSUIT AND SHACKLES TO BE TRANSPORTED BACK TO MANCI.

8) ON OR ABOUT 12TH DAY OF FEBRUARY, 2022 TIPTON ARRIVED BACK AT MANSFIELD CORRECTIONAL INSTITUTE (MANCI), HE WAS PLACED ON CONSTANT WATCH STATUS, PRIOR TO BEING PLACED IN HIS MENTAL HEALTH OBSERVATION CELL, TIPTON WAS THOROUGHLY SEARCHED, HIS CELL WAS SEARCHED, NOTHING WAS FOUND IN HIS POSSESSION. SO TIPTON WAS PLACED IN HIS CELL. TIPTON COMPLAINED OF SEVERE ABDOMINAL PAIN, COMPLAINED OF THE LEFT FORIEGN BODY. TIPTON WAS IGNORED.

9.) ON 12TH DAY OF FEBRUARY, 2022 AT APPROX. 10PM TIPTON COUGHED AND FELT A POP WITH A AIR NOISE, LOOKED DOWN ON CONCRETE FLOOR SAW BLOOD, PUSS AND THE NEEDLE HE INSERTED ON 2-11-22. TIPTON ASKED HIS CONSTANT WATCH OFFICER TO SEE NURSE, IGNORED.

10.) ON 12TH DAY OF FEBRUARY, 2022 AT APPROX. 10:15PM TIPTON ADVISED HIS CONSTANT WATCH OFFICER, OFFICER CLARK THAT A NEEDLE POPPED OUT OF HIS ABDOMINAL WOUND AND SHOWED OFFICER CLARK A 4.5CM PINKISH TIP CATHETER HYPERDERMIC NEEDLE, AND SHOVED IT POINT FIRST DEEP INTO HIS SURGICALLY REPAIRED ABDOMEN. OFFICER CLARK REFUSED TO CALL A SIGNAL 3 MEDICAL EMERGENCY, AND DELAYED TIPTONS MEDICAL CARE BY WAITING FOR NURSE JASON HUGHES, RN TO DO A ROUND. OFFICER CLARK

ADVISED JASON HUGHES, RN OF WHAT HE SAW TIPTON WITH AND
WHAT TIPTON DID WITH THE NEEDLE. JASON HUGHES, RN CALLED
FOR SECURITY.

11) ON 12TH DAY OF FEBRUARY, 2022 SHIFT CAPTAIN J.W WINDOM,
JASON HUGHES, RN OFFICER PAYNE AND OFFICER CLARK ENTERED
TIPTON'S CELL SO THAT JASON HUGHES, RN AND NURSE IN CHARGE
COULD EXAMINE TIPTON'S WOUND. JASON HUGHES, RN OBSERVED
A PINKISH CATHETER TIP OBJECT PROTRUDING FROM TIPTONS WOUND,
STATED HE WAS GOING TO CONTACT DOCTOR SINCE IT IS AFTER HOURS.

12.) ON OR ABOUT 12TH DAY OF FEBRUARY, 2022 PER GARY TIPTON'S MEDICAL
RECORDS AT APPROX. 10:35PM, JASON HUGHES, RN CHARTED HE
CONTACTED BOTH JULIE HENSLEY, HCA AND J. SLONE, CNA
BUT GOT NO ANSWER, LEFT DETAILED MESSAGE. AT THAT POINT,
JASON HUGHES, RN AS NURSE IN CHARGE COULD HAVE INITIATED
EMERGENCY MEDICAL SERVICES (EMS) CONTACT AND TRANSPORT
PURSUANT TO O.D.R.C. 68-MED-20 VI (B)(2)(A)
(SEE EXHIBIT # 2)

## 68-MED-20 VI (B)(2)(A)

A.) WHERE A TIME FOR TELEPHONE CONTACT FROM ALP IS LIKELY
TO CREATE A SERIOUS THREAT TO LIFE AND/OR LIMP OR BODY
FUNCTION, THE NURSE MAY INITIATE EMERGENCY MEDICAL
SERVICES (EMS) CONTACT AND TRANSPORT. (SEE EXHIBIT # 2)

JASON HUGHES, RN WHO MADE CONTACT WITH TIPTON, PHYSICALLY
ASSESSED TIPTON, OBSERVED A FOREIGN OBJECT, OFFICER CLARK
TELLING HIM IT WAS A NEEDLE. JASON HUGHES, RN CHARTED THIS
IN TIPTON'S MEDICAL CHART AT 10:35PM. HE KNEW FROM MEDICAL
EXPERIENCE THE KNOWN RISK THE NEEDLE POSES IF IT PUNCTURES OR
PERFORATED ONES BOWEL, COMPLETELY IGNORED THAT RISK,
DELIBERATELY LEFT TIPTON BEHIND A LOCKED DOOR WITH NO LIBERTY
TO PROVIDE HIS OWN MEDICAL CARE. JASON HUGHES, RN WHO
PARTICIPATES IN ANNUAL TRAINING PURSUANT TO 68-MED-20 VI (C)(i)
(SEE EXHIBIT # 2)

## 68-MED-20 VI(c)(1)

1.) CORRECTIONAL AND HEALTH CARE STAFF SHALL BE TRAINED TO RESPOND TO HEALTH-RELATED SITUATIONS WITHIN FOUR-MINUTES RESPONSE TIME, THE TRAINING PROGRAM SHALL BE CONDUCTED ANNUALLY AND SHALL BE DEVELOPED COOPERATIVELY BETWEEN THE HEALTH AUTHORITY AND THE FACILITY AND SHALL INCLUDE INSTRUCTIONS ON THE FOLLOWING:

A.) RECOGNITION OF THE SIGNS AND SYMTOMS AND KNOWLEDGE OF ACTION REQUIRED IN POTIENTIAL EMERGENCY SITUATIONS, AND

B.) ADMINISTRATION OF BASIC FIRST AID, AND

C.) CERTIFICATION IN CARDIOPULMONARY RESUSCITATION, AND

D.) METHODS OF OBTAINING ASSISTANCE, AND

E.) SIGNS AND SYMTOMS OF MENTAL ILLNESS, VIOLENCE AND ACUTE CHEMICAL INTOXICATION AND WITHDRAWL, AND

F.) PROCEDURES OF PATIENT TRANSFERS TO APPROPRIATE MEDICAL FACILITIES, AND

G.) SUICIDE PREVENTION,

(SEE EXHIBIT #2)

JASON HUGHES, RN WAS TRAINED TO PROPERLY HANDLE A EMERGENCY SITUATION OF THIS NATURE. THIS COURT DOESN'T NEED A MEDICAL EXPERT TO TELL THEM THAT JASON HUGHES, RN INITIAL RESPONSE TO TIPTON'S SERIOUS MEDICAL NEEDS ONLY PLACED HIM IN IMINENT DANGER. JASON HUGHES, RN IGNORED HIS TRAINING, COMPLETELY DISREGARDED ODRC POLICY.

13.) ON 12TH DAY OF FEBRUARY, 2022 PRIOR TO JASON HUGHES. RN AND OTHERS LEAVING TIPTONS CELL. J.W WINDOM SHIFT CAPTAIN TOLD TIPTON "DO NOT MAKE ME COME BACK TONIGHT", EVERYONE LEFT CELL.

14.) ON 13TH DAY OF FEBRUARY, 2022 AT APPROX. 1:30AM JASON HUGHES, RN CAME TO TIPTONS CELL TO TAKE HIS VITALS, TIPTON WAS UNABLE TO WALK DUE TO SEVERE PAIN AND PRESSURE 4,5CM NEEDLE HAD ON HIS ABDOMEN. SO JASON HUGHES, RN ADVISED HIM THAT J.SLONE, CNP CALLED BACK AND STATED TIPTON CAN STAY IN THE CELL WITH INSERTION

OF THE NEEDLE. NO ORDERS WERE MADE BUT J. SLONE, CND ONLY TO CHECK TIPTONS VITALS. DUE TO TIPTON BEING UNABLE TO WALK J.W WINDOM, WAS CALLED BACK TO HIS CELL. TIPTON CRAWLED TO CELL DOOR, TIPTON WAS ASKED TO CUFF UP, TIPTON ASKED J.W. WINDOM TO ACTIVATE HIS BODY CAMERA OUT OF FEAR OF WHAT J.W WINDOM SAID PRIOR TO LEAVING TIPTONS CELL. J.W WINDOM ADVISED TIPTON HE DID NOT HAVE TO WEAR A BODY CAMERA DUE TO MEDICAL CONDITION, TIPTON COMPLIED AND CUFF UP AND J.W WINDOM TRIED TO BREAK TIPTONS LEFT WRIST, AND SLAMMED HIM ON CELL BED, PLACING HIS BOOT ON TIPTONS TESTICLES CAUSING A DIRE PAIN, FORCING TIPTON TO ACCEPT HIS MEDICAL CARE. TIPTON CRIED, BEGGED, PLEADED. J.W WINDOM USED INTIMIDATION AND PHYSICAL FORCE TO PURSUADE TIPTON TO NOT PURSUE ALLEGATIONS AGAINST HIM.

15.) ON 13TH DAY OF FEBRUARY, 2022 TIPTON STARTED TO SHOW SERIOUS SIGNS OF INFECTION. HE WAS COUGHING, AND PUKING UP BLOOD, TEMPS OF 100° AND HIGHER WITH HOT AND COLD CHILLS AND SWEATS. TIPTON WAS WEAK, UNABLE TO WALK.

16.) TIPTON ATTEMPTED TO REPORT J.W WINDOM'S ACTIONS TO STAFF BUT DUE TO A DIVIDER PLACED ON CELL WINDOW OUTSIDE HIS CELL TO OBSTRUCT THE VIEW OF CAMERA POINTING AT TIPTONS CELL. TIPTON'S CLAIMS WERE UNSUBSTANIATED AND J.W WINDOM GOT BY WITH ASSUALTING TIPTON AND ABUSING THE MENTALLY ILL.

17.) URIAH MELTON AND MANCI INVESTIGATOR CAME TO INTERVIEW TIPTON BUT WITH VOICE RECORDER TURNED OFF TIPTON WAS TOLD HIS CLAIMS WONT GO NO WHERE, THEIR FRIEND WOULDN'T DO THAT AND TO FALSELY MAKE THESE ALLEGATIONS WILL COME WITH CONSEQUENCES, SO OUT OF FEAR OF RETALIATION AND INTIMIDATION, HE AGREED TO NOT GO FORWARD WITH ALLEGATIONS. (SEE EXHIBIT 3)

18.) ON 14TH DAY OF FEBRUARY, 2022 TIPTON COULD NOT MOVE, HE STARTED TO HALLUCINATE, COULD NOT MOVE ALL HE COULD DO IS LAY ON BUNK SHIVER, AND SWEAT, SCARED, INTIMIDATED AND MENTALLY BROKEN. TIPTON WAS PHYSICALLY WEAK AND SICK, DUE TO SERIOUS INFECTION.

AT APPROX. 9 AM, JULIE HENSLEY, HCA AND KENDRA NEWLAND, CNP CAME TO TIPTONS OBSERVATION CELL TO EXAMINE TIPTONS WOUND. AT THIS POINT THE PINKISH TIPPED OBJECT JASON HUGHES, RN OBSERVED WAS ALL THE WAY INSIDE TIPTONS ABDOMEN. MORE THAN 72 - HOURS HAD PASSED, PER POLICY 68-MED-20 VI (A)(2) (SEE EXHIBIT # ) TIPTON SHOULD OF BEEN TREATED AT A LOCAL EMERGENCY DEPARTMENT. BOTH JULIE HENSLEY, HCA AND KENDRA NEWLAND, CNP, MANSFIELDS HEALTH AUTHORITY AND ALP BOTH NEGLECTED THE DUTIES AS MEDICAL SUPERVISORS, FAILED TO ADHERE TO ODRC POLICIES 68-MED-01 AND 68-MED-20, IGNORED TIPTONS SERIOUS MEDICAL NEEDS AND THERE KNOWN RISK, COMPLETELY DENYING TIPTON EMERGENT CARE. TIPTON SPENT 72 HOURS WITH NO WOUND CARE, NO MEDICAL ORDERS WITH A VERY SHARP POINTY NEEDLE INSERTED IN HIS ABDOMINAL CAVITY, KENDRA NEWLAND, CNP ORDERED X RAY AND BOTH KENDRA NEWLAND, CNP AND JULIE HENSLEY, HCA ADVISED TIPTON HE WAS GOING TO LEARN HIS LESSON THE HARD WAY, HE IS NOT GOING TO HOSPITAL.

18.) ON 14TH DAY OF FEBRUARY, 2022 AT APPROX. 4:30 P.M X RAY TECH SHOWED UP AT MANCI TO PERFORM X-RAY IMAGES ON TIPTON. X RAY TECH DID THESE IMAGES WITH BOTH KENDRA NEWLAND, CNP AND JULIE HENSLEY, HCA PRESENT. X-RAY TECH ADVISED BOTH THAT A 4.5 CM RADIOPAQUE FORIEGN BODY WAS PRESENT, AND EVEN WITH CONCRETE EVIDENCE, PRISON OFFICIAL STATING THEY PHYSICALLY OBSERVED TIPTON PUT A NEEDLE IN HIS ABDOMEN, BOTH SUPERVISORS WERE DELIBERATE INDIFFERENT TO THE MEDICAL NEED AND ADVISED TIPTON THAT X RAY WOULD BE FORWARDED TO "OSUWMC" SURGEON FOR CONSULT, THAT IT WOULD STAY IF IT WAS UP TO THEM. TIPTON WAS PLACED BACK INTO HIS CELL WITH NO ORDERS, NO BANDAGE TO COVER WOUND, THEIR CONDUCT TOWARD TIPTON WAS OF HATE AND MALICE, TO INTENTIONALLY INFLICT PAIN AND EMOTIONAL DISTRESS, TO BREAK TIPTON.

19.) JULIE HENSLEY, HCA IS MANCI INSTITUTION HEALTH AUTHORITY, 68-MED-01 "MEDICAL SERVICES" SHE FAILED AT HER DUTIES PER POLICY AND VIOLATED TIPTONS NATURAL CONSTITUTIONAL RIGHTS.

<u>68 - MED - 01 (V)</u>

IT IS ODRC POLICY TO PROVIDE MEDICAL SERVICES AND CONTINUITY OF CARE TO INCARCERATED INDIVIDUALS. CONTINUITY OF CARE IS PROVIDED FROM ADMISSIONS TO TRANSFERS OR DISCHARGE FROM FACILITY AND SHALL INCLUDE REFERRALS TO COMMUNITY BASED PROVIDERS WHEN INDICATED. THESE SERVICES ARE TO BE ASSESSIBLE TO ALL INCARCERATED INDIVIDUALS, INCLUDE AN EMPHASIS ON DISEASE PREVENTION, AND REFLECT A HOLISTIC APPROACH IN ACCORDANCE WITH APPROVED LEVELS OF CARE.
(SEE EXHIBIT # 4)

BOTH JULIE HENSLEY, HCA AND KENORA NEWLAND, CNP KNEW WHEN TIPTON WAS RELEASED FROM "OSULUMC" ON 8-TH DAY OF FEBRUARY, 2022 APART OF HIS DISCHARGE PLANS WERE ANY COMPLICATIONS TO INJURED AREA TO RETURN TIPTON BACK TO EMERGENCY DEPARTMENT IMMEDIATELY.

<u>68 - MED - 01 VI (2) (B) (i)</u>
<u>(SEE EXHIBIT # 4)</u>

B.) RESPONSIBILITIES OF INSTITUTION HEALTH AUTHORITY SHALL INCLUDE, BUT NOT LIMITED TO, THE FOLLOWING:

    i.) DECISIONS ABOUT DEPLOYMENT OF HEALTH RESOURCES AND DAY TO DAY OPERATIONS OF THE MEDICAL SERVICES PROGRAM, AND

    iii.) DEPLOYMENT OF MECHANISMS, INCLUDING WRITTEN AGREEMENTS, WHEN NECESSARY, TO ENSURE THAT THE SCOPE OF SERVICES IS PROVIDED AND PROPERLY MONITORED, AND

    iv.) ADHERE TO AND ENSURE ALL MEDICAL STAFF COMPLY WITH ODRC POLICY AND PROTOCOLS, AND

    v.) REVIEW HEALTH CARE POLICIES AND PROTOCOLS ON AN ANNUAL BASIS, AND

JULIE HENSLEY, HCA IS ULTIMATE HEALTH AUTHORITY HAS COMPLETE

11.

KNOWLEDGE OF ODRC POLICY, SHE HAVE COMPLETE KNOWLEDGE OF TIPTONS INJURIES KNEW POLICY STATES EMERGENT CARE IS TO BE PROVIDEAT LOCAL EMERGENCY DEPARTMENT PER POLICY, SHE IS SUPPOSE TO UPHOLD AND ENFORCE. SHE KNEW THAT THE NEEDLE TIPTON INSERTED HAD TO COME OUT AND THE RISK IT POSED TO HIS HEALTH, IT WAS LIFE THREATENING.

68 - MED - 20 VI (A)(2)
" PROCEDURES"

2.) EMERGENT CARE SHALL BE PROVIDED AT LOCAL HOSPITAL EMERGENCY SERVICES DEPARTMENTS, AS DESIGNATED BY MEDICAL PROTOCOL B-8. (SEE EXHIBIT #2)

20.) TIPTON WAS IN POOR CONDITION AND WAS PLACED BACK INTO HIS CELL, UNABLE TO EAT HASN'T ATE SINCE 12TH DAY OF FEBRUARY 2022, IT IS NOW 14TH DAY OF FEBRUARY, 2022. TIPTON WAS DENIED WOUND CARE SO TIPTON TOOK HIS FOOD FROM HIS FOOD TRAY AND SMEAR IT ALL OVER CELL WINDOW TO MAKE SURE NO ONE COULD SEE IN CELL. TIM MCCONNAHAY, WARDEN OF MANSFIELD CORRECTIONAL INSTITUTE CAME TO TIPTON'S OBSERVATION CELL WINDOW AND TIPTON BEGGED HIM FOR HELP, AND TOLD HIM WHAT MEDICAL STAFF WAS DOING. TIM MCCONNAHAY, TOLD TIPTON THAT MEDICAL WAS JULIE HENSLEY'S, THAT SHE MAKES ULTIMATE DECISIONS AND NOTHING WAS GOING TO BE DONE. TIM MCCONNAHAY IS WARDEN AND HAD COMPLETE KNOWLEDGE OF ACTIONS TAKEN, AND REFUSED TO PROPERLY TRAIN, INVESTIGATE WHAT WAS GOING ON. HE TO WAS INDIFFERENT TO TIPTONS MEDICAL NEEDS.

21.) ON 15TH DAY OF FEBRUARY, 2022 'AT APPROX 5:45 PM TIPTON WAS PLACED IN A PRISON VAN AND WAS TRANSPORTED TO 'OSUWMC" DUE TO SURGEON CONTACTING JULIE HENSLEY, HCA ADVISING HER TIPTON NEEDED TO BE IN AN EMERGENCY DEPARTMENT TO UNDERGO EMERGENT SURGERY.

22.) ON 16TH DAY OF FEBRUARY, 2022 AFTER MORE THAN 4 DAYS PASSED SINCE TIPTON INSERTED NEEDLE, HE RECIEVED EMERGENCY SURGERY TO REMOVE NEEDLE. ALFREDO CORDOVA, MA ACUTE CARE SURGERY A, WAS MD WHO REMOVED NEEDLE AND ADVISED TIPTON HE IS LUCKY TO BE ALIVE DUE TO POSITION OF NEEDLE

SITTING WITH A CM FROM HIS AORTA VIEN. TIPTON RECIEVED 22 STAPLES AND WAS ADMITTED TO "OSUWMC" UNTIL 2-18-22.

23.) ON 18TH DAY OF FEBRUARY 2022, TIPTON WAS DISCHARGED FROM "OSUWMC" WITH ORDERS TO REMOVE STAPLES IN 7-10 DAYS, WITH WET TO DRY DRESSING CHANGE.

24.) ON OR ABOUT 22ND DAY OF FEBRUARY, 2022 TIPTON WAS DISCHARGED FROM MANCI INFIRMARY BACK TO GENERAL POPULATION WITH (22) TWENTY-TWO STAPLES, WITH NO WOUND CARE ORDER. TIPTON WAS GIVEN (5) FIVE BANDAGES TO DO HIS OWN WOUND CARE.

25.) ON 26TH DAY OF FEBRUARY, 2022 TIPTON WOKE UP WITH HIS ENTIRE UNIFORM AND BED FULL OF BLOOD, PUSS AND DRAINAGE. TIPTON WENT IMMEDIATELY WENT TO OFFICER DESK AND SHOWED OFFICER BUMPUS AND OFFICER HENRY, THEY ADVISED TIPTON TO GO TO MEDICAL AFTER BREAKFAST. TIPTON COMPLIED AND ASHLEY LUCAS, RN OBSERVED TIPTON AND HIS BLOODY CLOTHING, TOLD TIPTON TO LEAVE MEDICAL, HE WAS OUT OF PLACE. THERE WERE NO ORDERS TO DO WOUND CARE SO SHE WASN'T DOING IT. TIPTON WENT BACK TO HOUSING UNIT, ADVISED OFFICER BUMPUS WHAT ASHLEY LUCAS, RN DID AND SAID. HE CONTACTED SHIFT CAPTAIN AND LT. BROOKS CAME TO ADDRESS ISSUE, HE SAW TIPTONS CLOTHES AND ESCORTED TIPTON BACK TO MEDICAL, AND ASHLEY LUCAS, RN CUSSED AT, YELLED AT, AND MISTREATED TIPTON IN PRESENCE OF LT. BROOKS, TIPTON WAS GIVEN A BANDAID AND KICKED OUT. A DRC 1000 FORM WAS FILLED OUT IN REGARDS TO INCIDENT.
    (SEE EXHIBIT #5)

26.) ON OR ABOUT 28TH DAY OF FEBRUARY, 2022, JULIE HENSLEY, HCA CALLED TIPTON TO HER OFFICE, ADVISED HIM THAT HIS STAY AT MANSFIELD COULD BECOME VERY HARD, THAT FILING LAWSUITS AND/OR FILING GRIEVANCES WOULD ONLY BRING HARDSHIP.

27.) ON OR ABOUT 4TH DAY OF MARCH, 2022 AFTER MORE THAN (16) SIXTEEN DAYS PASSED SINCE TIPTON RECIEVED (22) TWENTY-TWO STAPLES. WHEN TIPTON WAS DISCHARGED FROM "OSUWMC", HIS DISCHARGE ORDERS STATED TO REMOVE STAPLES IN 7-10 DAYS BUT DUE TO THE WAY TIPTON WAS TREATED BY ALL MEDICAL STAFF, KENDRA NEWLAND, CNP REFUSED TO REMOVE STAPLES AGAINST "OSUWMC" DISCHARGE ORDERS. OFFICER HENRY OBSERVED HOW IRRITATED TIPTONS WOUND WAS DUE TO STAPLES, SO TIPTON

WAS FORCED TO REMOVE STAPLES ON HIS OWN WITH TOENAIL CLIPPERS AND TWEEZERS. TIPTON HAS THE (22) TWENTY-TWO STAPLES IN HIS POSSESSION.

28.) ON 19TH DAY OF APRIL, 2022 TIPTON WAS EXPERIENCING A LOT OF SEVERE ABDOMINAL PAIN, HE HAD A LARGE LUMP FORMING IN HIS ABDOMEN WHICH IS KNOWN AS A VENTRAL HERNIA. TIPTON FILLED OUT A HEALTH SERVICE REQUEST PLACED IT INTO A MEDICAL KITE BOX. THAT REQUEST WAS IGNORED. (SEE EXHIBIT #6)

29.) ON 5TH DAY OF MAY 2022 TIPTON WAS TRANSFERED TO (WCI) WARREN CORRECTIONAL INSTITUTE, AND WAS EXAMINED BY DR. WILLIAM HARLAN, CMD. HE REFERRED TIPTON FOR A SURGERY CONSULT.

30.) ON 23RD DAY OF MAY, 2022 TIPTON PLACED ANOTHER HEALTH SERVICE REQUEST DUE TO PAIN AND VENTRAL HERNIA DOUBLING IN SIZE. TIPTON WAS GIVEN A ABDOMINAL BINDER. AWAITED DECISION ON SURGERY. (SEE EXHIBIT #6)

31.) ON 1ST DAY OF AUGUST, 2022 TIPTON WAS TRANSFERED TO ALLEN/OAKWOOD CORRECTIONAL INSTITUTE (AOCI) TIPTON COMPLAINED OF PAIN, THE WAY HIS VENTRAL HERNIA WAS SIZE OF BASKETBALL, AND REGARDING TO HIM BEING SEARCHED ALL THE TIME DUE TO SOMETHING LARGE STICKING OUT SHIRT.

32.) ON 13TH DAY OF AUGUST, 2022 AFTER NUMEROUS REQUEST AND COMPLAINTS, TIPTON TOOK MATTERS INTO HIS OWN HANDS, LANCED OPEN VENTRAL HERNIA AND FORCED IT TO BE REPAIRED. "OSUWMC" FIXED VENTRAL HERNIA.

33.) ANNETTE CHAMBERS-SMITH IS THE DIRECTOR OF ALL OF O.D.R.C. SHE IS OVERSIGHT OF ALL ACTIONS AND OPERATIONS. SHE HAD AND HAS COMPLETE KNOWLEDGE OF WHO GARY TIPTON IS AND HIS LONG MENTAL HEALTH HISTORY. SHE IS RESPONSIBLE FOR DAY TO DAY ACTIVITIES OF "ODRC". SHE IS THE ONE WHO WRITES AND ENFORCES POLICIES AND PROCEDURES, SHE HAD COMPLETE KNOWLEDGE OF ALL THE EVENTS HEREIN THIS COMPLAINT, SHE IS LIABLE FOR SUPERVISING THE DEFENDANTS.

34) ALL NAMED DEFENDANTS HEREIN THIS COMPLAINT HAD COMPLETE KNOWLEDGE THAT TIPTON HAD PRIOR SURGERY ON 2-8-22, KNEW TIPTON RE-INSERTED FOREIGN BODY ( 4.5cm CATHETER TIP HYPODERMIC NEEDLE ) INTO HIS NEWLY SURGICALLY REPAIRED ABDOMINAL CAVITY, THE DEFENDANTS LEFT TIPTON IN A LOCKED CELL WITHOUT A LIBERTY TO PROVIDE HIS OWN MEDICAL CARE, PLACING TIPTON IN IMMINENT DANGER. THE DEFENDANTS ACTED WITH DELIBERATE INDIFFERENCE TO TIPTONS SERIOUS MEDICAL NEEDS, INTENTIONALLY INFLICTED PAIN AND EMOTIONAL DISTRESS, ACTED WITH A GROSS NEGLIGENCE BY LEAVING A DANGEROUS OBJECT IN SOMEONES ABDOMINAL CAVITY, POSING A LIFE THREATEN RISK, OBJECTIVELY, THE DEFENDANTS KNEW OF SERIOUS MEDICAL NEED, SUBJECTIVELY PRECEIVED FACTS FROM WHICH TO INFER SUBSTANTIAL RISK TO TIPTON AND THEY DID IN FACT DRAW THE INTERFERENCE, AND COMPLETELY DISREGARDED THAT KNOWN RISK, THIS IS CRUEL AND UNUSUAL PUNISHMENT.

## RELIEF SOUGHT IN THIS COMPLAINT

WHEREFORE, PLAINTIFF GARY TIPTON PRAY THAT THIS HONORABLE COURT ENTERS A JUDGMENT AS FOLLOWS.

1.) GRANT, TIPTON A DECLARATION THAT THE ACTS AND OMISSIONS OF THIS COMPLAINT VIOLATED HIS CONSTITUTIONAL RIGHTS UNDER THE LAW AND CONSTITUTION, AND

2.) GRANT, TIPTON NOMINAL - COMPENSATORY - PUNITIVE DAMAGES AGAINST ODRC DIRECTOR ANNETTE CHAMBERS-SMITH FOR A TOTAL AMOUNT OF $1,000,000.00, AND (SUED IN HER OFFICIAL AND INDIVIDUAL CAPACITY)

3.) GRANT, TIPTON NOMINAL - COMPENSATORY - PUNITIVE DAMAGES AGAINST URIAH MELTON FOR A TOTAL AMOUNT OF $150,000.00, AND
(SUED IN HER INDIVIDUAL CAPACITY)

4.) GRANT, TIPTON NOMINAL - COMPENSATORY - PUNITIVE DAMAGES AGAINST TIM MCCONNAHAY FOR A TOTAL AMOUNT OF $150,000.00 (SUED IN HIS INDIVIDUAL CAPACITY), AND

5.) GRANT, TIPTON NOMINAL - COMPENSATORY - PUNITIVE DAMAGES AGAINST J.W WINDOM FOR A TOTAL AMOUNT OF $300,000.00 (SUED IN HIS OFFICIAL AND INDIVIDUAL CAPACITY), AND

6.) GRANT, TIPTON NOMINAL - COMPENSATORY - PUNITIVE DAMAGES AGAINST OFFICER CLARK FOR A TOTAL AMOUNT OF $25,000.00 (SUED IN HIS INDIVIDUAL CAPACITY), AND

7.) GRANT, TIPTON NOMINAL - COMPENSATORY - PUNITIVE DAMAGES AGAINST OFFICER PAYNE FOR A TOTAL AMOUNT OF $25,000.00 (SUED IN HIS INDIVIDUAL CAPACITY), AND

8.) GRANT, TIPTON NOMINAL - COMPENSATORY - PUNITIVE DAMAGES AGAINST JULIE HENSLEY, HCA FOR A TOTAL AMOUNT OF $500,000.00 (SUED IN HER INDIVIDUAL AND OFFICIAL CAPACITY), AND

9.) GRANT, TIPTON NOMINAL - COMPENSATORY - PUNITIVE DAMAGES AGAINST KENDRA NEWLAND, CNP FOR A TOTAL AMOUNT OF $500,000.00 (SUED IN HER INDIVIDUAL AND OFFICIAL CAPACITY), AND

10.) GRANT, TIPTON NOMINAL - COMPENSATORY - PUNITIVE DAMAGES AGAINST J. SLONE, CNP FOR A TOTAL AMOUNT OF $1,000,000.00 (SUED IN INDIVIDUAL AND OFFICIAL CAPACITY), AND

11.) GRANT, TIPTON NOMINAL - COMPENSATORY - PUNITIVE DAMAGES AGAINST JASON HUGHES, RN FOR A TOTAL AMOUNT OF $300,000.00 (SUED IN HIS INDIVIDUAL AND OFFICIAL CAPACITY), AND

12.) GRANT, TIPTON NOMINAL - COMPENSATORY - PUNITIVE DAMAGES AGAINST ASHLEY LUCAS, RN FOR A TOTAL AMOUNT OF $250,000.00 (SUED IN HER INDIVIDUAL AND OFFICIAL CAPACITY), AND

13.) PLAINTIFF SEEKS JURY TRIAL ON ALL TRIABLE ISSUES, AND

14.) PLAINTIFF SEEKS WRITTEN APOLOGY FOR ALL NAMED DEFENDANTS, AND

15.) PLAINTIFF SEEKS RECOVERY COST FOR THIS SUIT, AND

16) PLAINTIFF SEEKS ANY OTHER RELIEF THIS HONORABLE COURT DEEMS NECESSARY, JUST AND EQUITABLE.

12-5-22
_____
DATE

GARY TIPTON #764382
WCI
P.O BOX 120
LEBANON, OHIO 45036

# AFFIDAVIT OF VERITY

I, GARY TIPTON, HEREBY VERIFIES THAT THE ALLEGATIONS AND CLAIMS HEREIN THIS COMPLAINT IS COMPLETE, TRUE AND CORRECT, TIPTON SWEARS UNDER THE PENALTY OF PERJURY THAT THIS COMPLAINT IS ACCURATE TO THE BEST OF MY KNOWLEDGE, TO THE NOTARY BELOW!

12-5-27
_____
DATE

GARY TIPTON #764352
WCI
P.O BOX 120
LEBANON, OHIO 45036

ON THIS ___5___ DAY OF __DECEMBER__, 2022 BEFORE ME, A NOTARY PUBLIC IN AND FORSAID COUNTY AND STATE, APPEARED GARY TIPTON #764352, WHO EXECUTED THE FOREGOING INSTRUMENT AND ACKNOWLEDGED AND EXAMINE AND READ AFFIDAVIT, SIGNED IT AND SAME IS HIS FREE ACT AND DEED.

IN WITNESS WHEREOF, I HAVE SET MY HAND AND OFFICIAL SEAL.

12/5/2022
_____
DATE

_____
NOTARY PUBLIC

REGINA PRATER
Notary Public, State of Ohio
My Commission Expires 08-18-2024

## CERTIFICATE OF SERVICE

A TRUE AND CORRECT COPY OF THIS AMENDED COMPLAINT WAS SENT VIA US POSTAL MAIL TO CLERK OF COURTS AT 85 MARCONI BLVD, COLUMBUS OHIO 43215 ON ___5___ DAY OF DECEMBER, 2022.

GARY TIPTON # 764382
WCI
P.O BOX 120
LEBANON, OHIO 45036

MEMORANDUM IN SUPPORT

## ARGUMENT #1
" DENIAL OF MEDICAL TREATMENT FOR SERIOUS MEDICAL NEEDS"

IN, DARRAH V. KRISHNER 865 F.3d 361., "WHEN PRISON OFFICIALS ARE AWARE OF A PRISONER'S OBVIOUS AND SERIOUS NEED FOR MEDICAL TREATMENT AND TO DELAY MEDICAL TREATMENT OF THAT CONDITION FOR NON-MEDICAL REASONS, THEIR CONDUCT IS CAUSING THE DELAY CREATES A CONSTITUTIONAL INFIRMITY, IF NECESSARY MEDICAL TREATMENT IS DELAYED FOR NON-MEDICAL REASONS..."

TIPTON WAS TREATED WITH SUCH A BIASED NATURE, AND PERSONAL PREJUDICE THAT THE DEFENDANTS CONDUCT WAS OF MALICE INTENT, TIPTON DID NOT RECIEVE EMERGENT CARE DUE TO HIS INJURIES NOT BEING OF SERIOUS NATURE BUT SOLELY BECAUSE THE DEFENDANTS WANTED THE PLAINTIFF GARY TIPTON TO SUFFER, TO LEARN A LESSON, TO NOT KEEP PARTICIPATING IN SELF INJURIOUS BEHAVIORS. TIPTON WAS LEFT IN A LOCKED CELL WITH A 4.5 CM CATHETER TIPPED HYPODERMIC NEEDLE DEEPLY INSERTED INTO HIS ABDOMINAL, THE DEFENDANTS KNEW OF THE RISK IT POSED ON THE LIFE OF THE PLAINTIFF AND DELIBERATELY DENIED TIPTON MEDICAL TREATMENT.

IN, COMSTOCK V. McCRARY 273 F.3d 693, 711 (6ST CIR. 2002)
" THE SUPREME COURT HAS CLEARLY STATED THAT A REMEDY FOR UNSAFE CONDITIONS NEED NOT AWAIT A TRAGIC EVENT." HELLING, 509 U.S. AT 33 *** PRISONER'S HAVE AN ESTABLISHED RIGHT TO MEDICAL ATTENTION ONCE .... PRISONER'S SUICIDAL TENDENCIES ARE KNOWN TO PRISON OFFICIALS."

TIPTON HAD ATTEMPTED SUICIDE ON 8TH DAY OF FEBRUARY, 2022, UNDERWENT EXPLORATION SURGERY TO REMOVE FORIEGN BODY AND WAS DISCHARGED BACK TO MANCI AND WITHIN HOURS HE INSERTED FORIEGN BODY BACK INTO HIS ABDOMINAL CAVITY. JASON HUGHES, RN AND J. SLONE, CNP BOTH CREATED AN UNSAFE

CONDITION BY IGNORING TIPTONS NEED FOR EMERGENT CARE AWAITING A TRAGIC EVENT BY WAITING OUT TIPTON'S INEVITABLE SURGERY TO REMOVE NEEDLE TO TEACH HIM A LESSON, TO BREAK A CYCLE. BOTH JASON HUGHES, RN AND J. SLONE, CNA KNEW THAT NEEDLE COULD NOT STAY IN TIPTONS ABDOMINAL CAVITY, IT WOULD HAVE TO BE REMOVED BUT IGNORED THAT KNOWLEDGE AND RISK TO AWAIT A TRAGIC EVENT. THE ONLY MEDICAL ATTENTION TIPTON RECIEVED WAS ONCE OR TWICE A DAY HIS VITALS WERE TOOK.

IN FARMER V. BRENNAN, 511 US AT 825, 834, 114 S.ct 1970, 128 L.ed. 2d 811 (1994) "AN INJURY SO OBVIOUS THAT EVEN A LAYPERSON WOULD EASILY RECOGNIZE THE NECESSITY FOR A DOCTOR'S ATTENTION" SATISFIES THE SERIOUS REQUIREMENT BECAUSE SUCH AN INJURY PRESUMPTIVELY GIVES RISE TO "A SUBSTANTIAL RISK OF HARM" BLACKMORE V. KALAMAZZ CITY. 390 F.3d 890, 899 (6ST CIR, 2004) "SECOND UNDER THE SUBJECTIVE COMPONENT, A SUSPECT MUST SHOW (1) AN OFFICIAL WAS AWARE OF FACTS FROM WHICH SHE COULD HAVE INTERFERED A SUBSTANTIAL RISK OF SERIOUS HARM TO THE SUSPECT (2) SHE IN FACT DREW SUCH INTERFERENCE AND (3) SHE NEVERTHELESS DISREGARDED THE KNOWN RISK...

TIPTON HAD INSERTED A 4.5CM CATHETER TIPPED HYPERDERMIC NEEDLE INTO HIS NEWLY SURGICALLY REPAIRED ABDOMINAL CAVITY, EVEN A LAYPERSON WOULD DETERMINE THE SERIOUS NEED FOR A DOCTOR'S EXAMINATION, NOT AWAIT AN TRAGIC EVENT TO OCCUR. TIPTON HAD A SERIOUS MEDICAL NEED BOTH MENTALLY AND PHYSICALLY, AND IT WAS KNOWN TO ALL NAMED DEFENDANTS, SO OBJECTIVE COMPONENT IS SATISFIED.

IN REGARDS TO SUBJECTIVE COMPONENT:

1.) JASON HUGHES, RN AND J. SLONE, CND, JULIE HENSLEY, HCA, AND KENDRA NEWLAND, CNO ALL WERE AWARE OF THE FACTS FROM WHICH SHE COULD HAVE INTERFERED A SUBSTANTIAL RISK OF SERIOUS HARM. EACH DEFENDANT KNEW THE RISK LEAVING A NEEDLE INSERTED IN AN ABDOMEN POSES TO THE HEALTH OF AN

INDIVIDUAL. EACH DEFENDANT SUBJECTED TIPTON TO SERIOUS INFECTION BY NEGLECTING HIS MEDICAL NEEDS, AND NOT PROVIDING HIM WITH THE EMERGENT CARE HE NEEDED.

2.) EACH DEFENDANT DREW SUCH INTERFERENCE BY LEAVING TIPTON IN A LOCKED PRISON CELL WITHOUT HIS LIBERTIES TO PROVIDE HIS OWN MEDICAL CARE. HE BECAME DEATHLY SICK, INFECTED AND REQUIRE IV ANTIBIOTICS, AND EMERGENCY SURGERY.

3.) EACH DEFENDANT NEVERTHELESS DISREGARDED THE KNOWN RISK OF PUNCTURING OR PERFORATING A BOWEL, CAUSING SERIOUS AND DEATHLY INFECTIONS

ARGUMENT # 2
"DELIBERATE INDIFFERENCE"

IN, DARRAH v. KRISHNER, 865 F.3d 361 (2017) PAGE 368
"THE COURT FOUND THAT PLAINTIFF HAD STATED A CLAIM OF DELIBERATE INDIFFERENCE WHERE HE ALLEGED THAT FOR (5) FIVE DAYS, DEFENDANTS REFUSED TO LOOK AT WOUND, OR CHANGE DRESSING EVEN AFTER SEVERAL DIRECT REQUEST AND AFTER A SICK CALL SLIP WAS SENT TO THE INFIRMARY... Id "OUR PRECEDENTS MAKE IT CLEAR THAT NEGLECTING A PRISONER'S KNOWN MEDICAL NEEDS MAY CONSTITUTE DELIBERATE INDIFFERENCE (SEE E.G. COMSTOCK, 273 F.3d AT 702 (WE HAVE LONG HELD, THAT PRISON OFFICIALS WHO HAVE BEEN ALERTED TO A PRISONER'S SERIOUS MEDICAL NEEDS ARE UNDER OBLIGATION TO OFFER MEDICAL CARE TO SUCH PRISONER.)

TIPTON HAD INSERTED A VERY SHARP POINT 4.5cm CATHETER TIPPED HYPODERMIC NEEDLE INTO HIS ABDOMINAL CAVITY WOUND IN THE PRESENCE OF OFFICER CLARK WHO THEN ALERTED JASON HUGHES, RN WHO CHARTED IN TIPTON'S MEDICAL RECORDS HE OBSERVED A PINKISH TIPPED CATHETER, WHICH MEANS NEEDLE WAS POINT FIRST IN WOUND. TIPTON SPENT (4) FOUR DAYS WITH NO WOUND CARE, NO MEDICAL ATTENTION AT ALL BESIDES A FEW VITAL CHECKS, THAT PROVED TIPTON'S TEMP TO BE 100° PLUS. TIPTON MADE NUMEROUS REQUEST FOR MEDICAL TREATMENT, NO ORDERS WERE PUT IN BY J. SLONE, CNP. TIPTON WAS NEGLECTED.

IN RUNNELLS V. ROGERS, 596 S.W. 2d 87 (TENN. 1980)
(NO EXPERT TESTIMONY NEEDED TO SHOW CAUSATION WHERE
HOSPITAL NEGLECTED TO REMOVE WIRE EMBEDDED FROM
SWOLLEN AND INFECTED FOOT.)

TIPTON WAS COMPLETELY DENIED MEDICAL ATTENTION,
EACH DEFENDANT KNEW TIPTON HAD INSERTED A 4.5 cm CATHETER
TIPPED HYPERDERMIC NEEDLE INTO HIS SURGICALLY REPAIRED ABDOMEN
AND NEGLECTED TO PROVIDE TIPTON WITH EMERGENT CARE, INSTEAD
HE SPENT DAYS BEFORE NEEDLE WAS SURGICALLY REMOVED.

TIPTON'S CONSTITUTIONAL RIGHTS WERE VIOLATED BY EACH
DEFENDANT.

12-5-22
_____
DATE

GARY TIPTON #764382
WCI
P.O. BOX 120
LEBANON, OHIO 45036

4.

A.) PLAINTIFFS EXHAULSTION OF ADMINSTRATIVE
   REMEDIES

APPENDIX
EXHIBIT #1

12-6-22
DATE

GARY TIPTON # 764352
WCI
P.O BOX 120
LEBANON, OHIO 45036

| Ref# WCI0522002864 | Housing:1D127LD | Date Created:05/31/2022 |
| ID#: A764382 | Name:TIPTON,GARY | |
| Form:Appeal | Subject:Health Care | Description:Other |
| Urgent:No | Time left:n/a | Status:Closed |

Original Form

*5/31/2022 2:34:02 PM : ( a764382 ) wrote*

per ohio state medical board and fed.r.civ.p

these are continuous wrongs act

on 1-24-20 i was taken to ohio state university wexner medical center for sucicde attempt while at marion correctional institute and i had large laceration to abdomen and both wrist with insertion of foriegn body (OSUWMC) tried to discharge me with out removal of the foriegn body and without stablizing me pursuant to 42 usc 1395dd after dr claimed there was no foreign body i had dug into my abdomen and pulled out the foriegn body and acted as i swallowed it at that point i was physically removed formt he hospital and on hte way back to the prison i retrieved one of the razor blades and cut myself wrist and stomach calling me to go to grady memorial hospital.

on febuary 8th 2022 i attempted suicide again calling for me to have emergent sergury and while i was at (OSUWMC) I WAS ALLOWED TO OBTAIN A NEEDLE ADN I BROUGT IT BACK TO MANCI WITH ME AND SHOVED IT BACK INTO MY STOMACH IN FROM OF CO CLARK WHO WAS ON MY WATCH , HE CALLED SHIFT CAPTAIN WINDUM AND HE CAME AND PHYSICALLY PUT HIS HANDS ON ME FOR REFUSING MY VITAL SIGNS BECAUSE I WAS BEING DENIED MEDICAL TREATMENT AFTER I SHOVED A NEDDLE INTO MY STOMACH POINT FIRST IN OPRESENCE OF CO CLARK , A XRZY WAS DONE 2 DAYS LATER AND THEN A SURGEON WAS CONTACTED AND THEY SAID I NEEDED EMERGENT SURGERY AND IWAS TAKEN TO 9 OSUWMC) FOR 2ND SURGERY IN 5 DAYS AND THIS TIME I WS TREATED SO POORLY BY HOSPITAL STAFF AND MY SUGRY WAS BY SAME PERSN AND IT IS MESSED UP AND HERNIATED

ONPPROX 26TH DAY 2022 I SAW CNP HERE AT WCI ABOUT THE HERNIA AND THAT IT HURTS AND WAS TOLD NOTHING WILL BE DONE THAT I NEEDED TO WEAR A BELT THIS IS A CONTINUANCE PRIOBLEM AND MY SERGURY WAS WRONGA T OSUWMC

Communications / Case Actions

*5/31/2022 2:34:02 PM : ( a764382 ) wrote*
Form has been submitted

*6/7/2022 7:44:18 AM : ( Julie Bush ) wrote*
WCI cannot address medical care that took place at other facilities. Regarding your visit with the CNP, you were educated on hernia hygiene and scarring from recurrent self injurious behavior per protocol. You were issued a bottom bunk/ bottom range order related to your hernia.

*6/7/2022 7:44:23 AM : ( Julie Bush ) wrote*
Closed incarcerated individual form

*6/7/2022 9:48:55 AM : ( a764382 ) wrote*
Escalated to Grievance

*6/7/2022 9:48:55 AM : ( a764382 ) wrote*
this is informal snmd greivance needs to be combined with other health care grievance and these issues needas to be addresed it is continous wrongs and negligence

*6/14/2022 11:07:59 AM : ( Jon Ledford ) wrote*
Closed incarcerated individual form - Disposition: Denied

*6/16/2022 12:25:54 PM : ( a764382 ) wrote*
Escalated to Appeal

*6/16/2022 12:25:54 PM : ( a764382 ) wrote*
the hernia is growing by the day and the niglect and negligence by odrc period and the surgeon at ohio university wexner medical center is the reason for this hernia and severe abdominal pain the continuous wrongs by both departments the hospital and odrc is at fault to staple me closed without sututring my abdminal wall is why my intestines are squeezing thru my abdomen

*7/15/2022 1:06:14 PM : ( karen stanforth ) wrote*
Affirmed.
The Office of the Chief Inspector has reviewed your grievance concerning your need for surgical repair of your ventral hernia. Such a procedure is not considered medically necessary for you at this time based on your physical assessment findings. The medical staff are following the ODRC guidelines set forth in 68-MED-01 and there are no indications that you are being treated with deliberate indifference or negligence as a results of these findings.
Karen Stanforth, Assistant Chief Inspector, Medical

*7/15/2022 1:06:31 PM : ( karen stanforth ) wrote*

| Ref# WCI0622000137 | Housing:1D127LD | Date Created:06/02/2022 |
|---|---|---|
| ID#: A764382 | Name:TIPTON,GARY | |
| Form:Appeal | Subject:Health Care | Description:Improper/inadequate medical care |
| Urgent:No | Time left:n/a | Status:Closed |

Original Form
*6/2/2022 8:22:59 AM : ( a764382 ) wrote*
on 2-8-22 i attempted suicide by self inflicted wouns to abdomenadn wrist went to OSU had surgery cam back to manci on or about the 12th day of feb. 2022 while i was at osu hospital on constant watch status i was let with surgicial items including a needle which i brought back to manci and showed officer clark and payne the needle and shove the needle point first into my abdomen and co clark called medical staff and they responded a hour later with captain windum which he told me if he came back he would break my shit and due to me being denied medical treatment and i knew i shoved a very sharpobject point first into a wound i just had surgery on i knew it was life-threatening so after two days nothing a xray was done which was consistent with the neeedle and cnp newland and hca hensley waited a day or so contacted surgeon at osu and they advised her to bring me to osu for another surgery and when i got to osu i waited in the hallway for almost 13 plus hours with serious infection and the male nurse whio will be named nurse john doe told me i should not have came back that i would eventually learn my lesson , i waited several more hours a surgeon came the same one who did my surgery a few days prio came and he also expressed his biasnessed for me coming right back and eventually i went into surgery and came out went into a satilite room and after a day or so ontot he prison ward and into a room no tv like the rest were given treated with utmost disrespect. i came back to manci expressed my discern with my hernia and was told that nothing would be done
a few days after o got back nurse ashley refused to do my treatment and a drc1000 was done by 2 cos and lt.
i wa transfered here to wci on the 5th day of may and i went to see nurse practioner and told her how much my hernia has grown shince i ghave been here and she said nothing will be done and that it was cosmetic osu knows exacly what they did i have blood in my stool , i poop 6-8 times a day and the treatment i am getting mentally and ,edicaly is inadequate an this needs to be addressd

Communications / Case Actions
*6/2/2022 8:22:59 AM : ( a764382 ) wrote*
Form has been submitted

*6/7/2022 7:07:11 AM : ( Jon Ledford ) wrote*
Your concern does not meet the timeline requirement established in Administrative Rule 5120-9-31 and therefore, cannot be addressed using the grievance procedure.

*6/7/2022 7:08:50 AM : ( Jon Ledford ) wrote*
Closed incarcerated individual form

*6/7/2022 9:47:15 AM : ( a764382 ) wrote*
Escalated to Grievance

*6/7/2022 9:47:15 AM : ( a764382 ) wrote*
this is an addition to the informal filed due to time constraint on jpay kiosk only 14 minutes to type on here (wci0522002864) this needs to be added to that complaint and this is continuous wrongs and it does follow under the 14 days time frame under 5120-9-31 due to cnp natasha arentz denying adequate treatment for hernia that was caused at osuwmc and manci and now denied treatment for it here

*6/14/2022 10:54:28 AM : ( Jon Ledford ) wrote*
Closed incarcerated individual form - Disposition: Denied

*6/16/2022 12:23:01 PM : ( a764382 ) wrote*
Escalated to Appeal

*6/16/2022 12:23:01 PM : ( a764382 ) wrote*
this issue does meet the timeframe under the 5120-9-31 of 14 days i am grieving the fact that natasha arentz cnp denied me adequate medical treatment relating from continuous wrongs by odrc medical staff and negligence at mansfield corretional institute and i want a copy of this action and grievance

*7/15/2022 1:04:55 PM : ( karen stanforth ) wrote*
Affirmed.
The Office of the Chief Inspector has reviewed your grievance concerning your need for surgical repair of your ventral hernia. Such a procedure is not considered medically necessary for you at this time based on your physical assessment findings. The medical staff are following the ODRC guidelines set forth in 68-MED-01 and there are no indications that you are being treated with deliberate indifference or negligence as a results of these findings.
Karen Stanforth, Assistant Chief Inspector, Medical

| Ref# WCI0622000137 | Housing:1D127LD | Date Created:06/02/2022 |

*7/15/2022 1:05:23 PM : ( karen stanforth ) wrote*
Closed incarcerated individual form - Disposition: Affirmed with comments

APPENDIX
EXHIBIT # 2

12-20-22
_____
DATE

GARY TIPTON #764382
WCI
P.O BOX 120
LEBANON, OHIO 45036

| SUBJECT:<br>**Emergency Services** | PAGE ___1___ OF ___9___. |
|---|---|
| | NUMBER: **68-MED-20** |
| ORC/OAC REFERENCE:<br>ORC 5120.01 | SUPERSEDES:<br>68-MED-20 dated 03/01/2021 |
| RELATED ACA STANDARDS:<br>2-CO-3B-02; 5-ACI-6A-08M, 6B-04,<br>5-ACI-6B-07M, 6B-08M, 6B-09 | EFFECTIVE DATE:<br>**May 2, 2022** |
| | APPROVED: |

**Ohio** | Department of
Rehabilitation & Correction

## I.   AUTHORITY

Ohio Revised Code 5120.01 authorizes the Director of the Department of Rehabilitation and Correction, as the executive head of the department, to direct the total operations and management of the department by establishing procedures as set forth in this policy.

## II.   PURPOSE

The purpose of this policy is to provide procedural guidelines for the delivery of emergency services within the Ohio Department of Rehabilitation and Correction (ODRC) and to provide for emergency response training and emergency preparedness.

## III.   APPLICABILITY

This policy applies to all persons employed by or contracted with the ODRC and specifically to those persons who must respond to medical, mental health, and dental emergencies.

## IV.   DEFINITIONS

The definitions for the below listed terms can be found at the top of the policies page on the ODRC Intranet at the following:

**Definitions Link**

- **Medical Emergency**

## V.   POLICY

It is the policy of the ODRC that all facilities shall provide for the availability of 24-hour medical, mental health, and dental services and shall ensure appropriate correctional and health care personnel are trained to respond to health-related emergency situations.

| SUBJECT: **Emergency Services** | PAGE___2___ OF ___9___. |
|---|---|

## VI.  PROCEDURES

### A.  Emergency Services Plan

1.  Each institution shall have adequate staff, space, equipment, and supplies to provide emergency medical care twenty-four (24) hours per day.

  a.  Each institution shall have a procedure for notifying medical personnel of a medical emergency.

  b.  All components of the clinical emergency evaluation relevant to the inmate complaint shall be documented and communicated to the institutional advanced level provider (ALP).

2.  Emergent care shall be provided at local hospital emergency service departments as designated by Medical Protocol B-8, Guidelines for Assessment and Processing of Medical Emergencies. All hospitals utilized shall be properly licensed in the State of Ohio.

3.  Utilizing the Institutional Plan for 24-hour Emergency Medical, Dental and Mental Health Access template (Appendix A), each facility shall develop a written plan that addresses 24-hour emergency medical, dental, and mental health response to include the following:

  a.  On-site emergency first aid, crisis intervention, and cardiopulmonary resuscitation (CPR), and

  b.  Emergency evacuation of the incarcerated individuals from the facility, and

  c.  Use of an emergency medical vehicle, and

  d.  Use of one or more designated hospital emergency rooms or appropriate health facilities, and

  e.  Emergency on-call or available 24-hours per day physician, dentist, or mental health professionals, when the emergency health facility is not located in a nearby community, and

  f.  Security procedures providing for immediate transfer of incarcerated individuals when deemed necessary, and

  g.  Emergency medications, supplies, and medical equipment.

### B.  Emergency Response

1.  Resuscitation Procedures

  a.  In the event of a medical emergency, all designated healthcare staff, direct care staff, and custody staff are expected to perform cardiopulmonary resuscitation (CPR) when necessary and if feasible. Direct care staff and custody staff shall be relieved of CPR at the direction of designated healthcare staff.

| SUBJECT: **Emergency Services** | PAGE __3__ OF __9__ . |

    b. Incarcerated individuals who are trained in CPR may voluntarily provide CPR or basic first aid to an injured person in an emergency when staff is not immediately available. Healthcare staff shall decide whether to continue using the incarcerated individual helper or to relieve the incarcerated individual helper when they arrive at the scene. No employee shall interrupt CPR in progress unless:

        i. The victim is showing signs of revival, or

        ii. Overriding security concerns dictate the incarcerated individual helper must be relieved, or

        iii. The incarcerated individual helper is observed incorrectly administering CPR by an employee with active CPR certification, or

        iv. Healthcare staff has arrived and elect to relieve the incarcerated individual helper.

2.     All referrals to the emergency department of the local hospital must be authorized by an institutional ALP or dentist following an on-site examination, which shall include complete vital signs, during normal working hours or by telephone order after hours.

    a. Where time for telephone contact from the ALP is likely to create a serious threat to life and/or loss of limb or body function, the nurse may initiate emergency medical services (EMS) contact and transport.

    b. The nurse shall notify the on-call ALP and the health planning administrator (HPA)/health care administrator (HCA) as soon as possible of the transport and of the reason(s) the patient was transported without prior approval of the ALP.

3.     Emergency Medical Transport

    a. When injuries or illness indicate a need (or potential need) for medical monitoring, medical intervention or life support during transport, ground, or air ambulance (as appropriate) shall be utilized. The institution ALP or if the ALP is not available the nurse in charge, shall determine the appropriate mode of transportation.

    b. All emergency transports shall be documented on the Emergency Department Trip Log (DRC5277). Documentation of the emergency transport shall include the date and time of the transport, the reasons for the transport, the mode of transportation, the time of arrival and departure of the EMS with the inmate.

4.     Treatment of Staff, Visitors and Infants/Children Residing in the ORW Nursery

    a. Local institution medical providers are responsible for delivering medical care to the incarcerated individual population.

DRC 1362

| SUBJECT: **Emergency Services** | PAGE ___6___ OF ___9___ . |

e. The institution safety and health coordinator is responsible for making and documenting monthly inspections of first aid kits and for reporting the outcomes of these inspections to the HPA/HCA.

f. An Automated External Defibrillator (AED) shall be available for use at each institution.

g. Each institution medical area and Residential Treatment Unit (RTU) shall maintain emergency response supplies and equipment that are immediately available to be taken to all medical emergencies. The Medical and RTU nursing staff shall check all emergency response equipment in their respective areas daily for availability and proper functioning.

h. Biohazard bags shall not be filled until the area has been cleared by the shift commander/designee following the appropriate security investigation.

i. Each institution shall develop an institution specific process for providing Band-Aids that may be used for minor injuries in incarcerated individual housing areas. A supply of Band-Aids shall also be made available to transportation officers to be used for minor injuries.

6. Notification of Next of Kin

a. Information shall be gathered at all ODRC's reception facilities from each incarcerated individual regarding designees who may be notified in case of serious illness, serious injury, or death. This information shall be updated annually by each institution, as outlined in ODRC Policy 66-ILL-03, Notification of and Communication with Next of Kin – Incarcerated Individual Illness/Injury.

b. The Managing Officer's Office/designee shall notify the next of kin in all cases involving an incarcerated individual death, as outlined in ODRC Policy 66-ILL-02, Incarcerated Individual Deaths.

C. **Emergency Training**

1. Correctional and health care staff shall be trained to respond to health-related situations within a four-minute response time. The training program shall be conducted annually and shall be developed cooperatively between the health authority and the facility and shall include instruction on the following:

a. Recognition of the signs and symptoms and knowledge of action required in potential emergency situations, and
b. Administration of basic first aid, and
c. Certification in cardiopulmonary resuscitation, and
d. Methods of obtaining assistance, and
e. Signs and symptoms of mental illness, violent behavior, and acute chemical intoxication and withdrawal, and
f. Procedures for patient transfers to appropriate medical facilities, and
g. Suicide prevention.

DRC 1362

APPENDIX
EXHIBIT # 3

12-6-22
_____
DATE

_____
GARY TIPTON #764382
WCI
P.O BOX 120
LEBANON, OHIO 45036

**Ohio** | **Department of**
**Rehabilitation & Correction**

Mike DeWine, Governor
Annette Chambers-Smith, Director

TO: Tipton, Gary ,A764382 ,MANCI ,4/B/137/B

FROM: Melton, Uriah L

DATE: 06/10/2022

RE: Notification of Sexual Abuse Investigation Outcome

On 02/13/2022, you reported an allegation of sexual abuse.

The investigation into your allegation was completed on 03/16/2022.

Upon completion, the outcome by Perpetrator was:

| Abuser | Outcome |
|---|---|
| Windom, J W | Unfounded |

UNFOUNDED - An allegation that was investigated and determined not to have occurred.

EXHIBIT # 4

12-6-22
DATE

GARY TIPTON #764352
WCI
P.O. BOX 120
LEBANON, OHIO 45036

| SUBJECT:<br>**Medical Services** | PAGE ___1___ OF ___18___. |
|---|---|
| | NUMBER: **68-MED-01** |
| RULE/CODE REFERENCE:<br>ORC 4723.43, ORC 4730, 5120.01 | SUPERSEDES:<br>68-MED-01 dated 06/1/2021 |
| RELATED ACA STANDARDS:<br>5-ACI-2A-03, 2C-12, 4A-01M, 4B-28M, 6A-01M,<br>5-ACI-6A-03 **thru** 6A-07, 6A-09, 6A-12M,<br>5-ACI- 6A-18M, 6A-20, 6A-22M, 6A-27, 6A-40,<br>5-ACI-6B-01M, 6B-02M, 6B-03M, 6B-11, 6B-12,<br>5-ACI-6C-01, 6C-03M, 6C-10, 6C-11, 6C-14M,<br>5-ACI-6C-15, 6D-01, 6D-04, 6D-06, 6D-08,<br>5-ACI-6D-09, 6D-10; 2-CO-4E-01 | EFFECTIVE DATE:<br>**March 14, 2022** |
| | APPROVED:<br>*a.C. Smith* |

**Ohio** Department of Rehabilitation & Correction

## I. AUTHORITY

Ohio Revised Code 5120.01 authorizes the Director of the Department of Rehabilitation and Correction, as the executive head of the department, to direct the total operations and management of the department by establishing procedures as set forth in this policy.

## II. PURPOSE

The purpose of this policy is to establish standard procedural guidelines for the delivery of medical services and the provision of unimpeded access to medical care for incarcerated individuals under the jurisdiction of the Ohio Department of Rehabilitation and Correction (ODRC).

## III. APPLICABILITY

This policy applies to all persons employed by or under contract with the ODRC (excluding DPCS, CTA, and OPI staff) and to all incarcerated individuals confined to institutions within the ODRC.

## IV. DEFINITIONS

The definitions for the below listed terms can be found at the top of the ODRC policies page on the ODRC Intranet at the following:

Definitions Link

- **Advanced Level Provider (ALP)**
- **Chief Medical Officer (CMO)**
- **Health Care**
- **Health Care Administrator (HCA)**
- **Intrasystem Transfer**
- **Medical Emergency**
- **State Medical Director**

DRC 1361 (Rev. 12/17)

| SUBJECT: **Medical Services** | PAGE___2____ OF ___18__. |
| --- | --- |

## V. POLICY

It is the policy of the ODRC to provide medical services and continuity of care to incarcerated individuals. Continuity of care is provided from admission to transfer or discharge from the facility and shall include referral to community-based providers when indicated. These services are to be accessible to all incarcerated individuals, include an emphasis on disease prevention, and reflect a holistic approach in accordance with approved levels of care.

## VI. PROCEDURES

### A. Governance and Administration

1. Responsibilities of Medical Operations

   a. The State Medical Director shall serve as the responsible physician and the medical authority for the ODRC and the medical services programs. The State Medical Director is responsible for the overall supervision of medical services.

   b. Medical Operations shall assist institution medical departments in the coordination of institution medical services.

   c. With input from institution field staff, Medical Operations shall utilize a health care staffing analysis to identify the types of health care providers necessary to provide the determined scope of services and essential positions needed to perform the health services mission in each institution.

   d. Medical Operations shall provide operational and fiscal support for all ODRC institution medical service programs.

   e. The Office of Correctional Health Care (OCHC) shall coordinate all medical continuous quality improvement activities within ODRC institutions.

   f. The OCHC shall manage equipment requests for institution health services.

   g. The OCHC shall coordinate the credentialing process for all advanced level providers (ALPs) including all physicians, dentists, ophthalmologists, podiatrists, nurse practitioners, clinical nurse specialists, and physician assistants.

2. Institution Health Authority

   a. The health care administrator (HCA) shall serve as the institution health authority.

   b. Responsibilities of the institution health authority shall include, but not be limited to, the following:

      i. Decisions about the deployment of health resources and the day-to-day operations of the medical services program, and

DRC 1362

| SUBJECT: **Medical Services** | PAGE __3__ OF __18__ . |
| --- | --- |

ii. Development of a mission statement that defines the scope of medical services, and

iii. Development of mechanisms, including written agreements, when necessary, to ensure that the scope of services is provided and properly monitored, and

iv. Adhere to and ensure all medical staff comply with ODRC policy and protocol, and

v. Review health care policies and protocols on an annual basis, and

vi. Development of institution medical procedures, when necessary, to address needs not addressed in ODRC policies. Each institution procedure and program in the institution's health care delivery system shall be reviewed, revised, if necessary, and signed at least annually by the HCA, and

vii. Review of and input to the Medical Operations created institutional staffing plan at least annually to identify if the number and type of staff is adequate to provide the determined scope of services, and

viii. Establishment of systems for the coordination of care among multidisciplinary medical providers, and

ix. Development of an institutional Continuous Quality Improvement (CQI) program, and

x. Coordination with institution administration to ensure that there is adequate space made available for administrative, direct care, professional, and clerical staff. Such space shall include access to a conference area, a records storage area, a public lobby, and toilet facilities, and

xi. Equipment supplies, and materials necessary for health services are procured and maintained as determined by the HCA.

a) Institution HCAs shall follow the purchase procedures outlined in PM-01, DAS Purchasing Procedures, for supplies not provided through the Ohio Department of Mental Health supply system.

b) If the institution's medical budget is exhausted, yet additional equipment essential to the provision of quality medical care is needed, a Request to Purchase (DRC1918), an Equipment Justification (DRC5372), and a Budget Adjustment Request (DRC2303) for such equipment must be forwarded to Medical Operations.

xii. And all other duties as assigned by the OCHC.

c. The HCA shall be available to provide clinical and administrative supervision to institution medical staff 24 hours per day, 7 days per week. In the event the HCA is

SUBJECT: **Medical Services**                    PAGE ___4___ OF ___18___.

not available to provide such supervision, the HCA shall arrange for back-up clinical and administrative supervision as follows:

    i.   Designate the CQI coordinator to provide clinical and administrative supervision as acting HCA; or

    ii.   Designate the assistant HCA or arrange with the appropriate institution deputy warden to provide administrative supervision of the institution medical staff as acting HCA and designate an experienced staff nurse to provide clinical guidance; or

    iii.   Arrange with the HCA of a nearby ODRC institution for provision of clinical guidance and arrange with the appropriate institution deputy warden to provide administrative supervision of the institution medical staff.

3.    Responsibilities of the Chief Medical Officer (CMO)

    a.   The CMO shall have responsibility for all matters involving clinical judgment and shall not be countermanded by non-clinicians. The CMO shall provide clinical leadership for the provision of medical services in conjunction with the HCA.

    b.   Additional responsibilities of the CMO include, but are not limited to:

        i.   Coordinating on-call physician coverage 24 hours per day, 7 days per week - provides and shares on-call responsibilities, and

        ii.   Adhere to and ensure all medical staff complies with ODRC policy and protocol, and

        iii.   Conducts peer review/monitoring on institutional ALP at least every six (6) months, which shall include a review of ten (10) patient records.
           a)  The CMO shall maintain these confidential reviews.
           b)  These reviews shall not replace the OCHC biennial peer reviews.

        iv.   Clinical care of the incarcerated individual population, and

        v.   Evaluation of incarcerated individuals for referral consultations, and

        vi.   Participation in collegial review process, per ODRC Medical Protocol B-1, Consultation Referrals, and

        vii.  Review and act upon the recommendations of the specialty consultants, which may include modification of the recommendation or development of an alternative plan of care. The rationale for modifications or alternative plans of care shall be documented in the electronic health record (EHR), and

        viii.  Monthly review of outstanding consults with the HCA, per ODRC Policy 68-MED-14, Specialty Health Care Services, and

✳ INCIDENT WITH ASHLEY LUCAS , RN
FROM 2-26-22.


APPENDIX
EXHIBIT # 5


12-6-22
_____
DATE


GREY TIPTON #764382
WCI
P.O. BOX 120
LEBANON, OHIO 45036

| Ref# MANCI0222006194 | Housing:4B151B | Date Created:02/26/2022 |
|---|---|---|
| ID#: a764382 | Name:TIPTON,GARY | |
| Form:Informal Complaint | Subject:Health Care | Description:Unprofessional conduct |
| Urgent:No | Time left:n/a | Status:Closed |

Original Form

*2/26/2022 5:14:59 PM : ( a764382 ) wrote*

on or about the 26th day of febuary 2022 i woke up and my abdominal wound had leaked all ocer and through my shirt and last abdominal lad and bandage so went tothe co desk and asked co bumpus and co henry if they would call medical and they advised me to just go over when i get done eatting breakfast so as i ate i went to breakfasta nd walked into medical and nurse ashley lucas was doing accucheck for diabetics but nurse lucas became very rude with me stating that i was out of place in which i wasnt and when i told her i needed wound care material since i was being left to tend to my own wound but when i told her she just told mr to get out and taht i would not be getting anything so i came back showed co bumpus and co henry told them waht the nurse didthey caled captains office and tgold them and lt brooks came escorted me to medicasl and nurse lucas became very rude and disresocoectfull i advised her that mrs hensley told me if i needed wound stuff to just ask i was not out of palce and when lt brooks gotme to medical he witnessed how rude and disrespectful she was and nurse lucas said she is running medical not hca hensley that i will be charged 3$ fora bandaide and i listened to her talk very disrespectful to and just walked out lt brooks witnessed thsia and wrote incident reports and so did both henry and bumpus this needs to be addressed and looked into please contact lt brooks to verify this

Communications / Case Actions
*2/26/2022 5:14:59 PM : ( a764382 ) wrote*
Form has been submitted

*2/28/2022 11:34:00 AM : ( LISA BOOTH ) wrote*
IP Tipton placed this information in another filed ICR regarding the same topic:
on or about the 26 day of febuary 2022 i went to mad per co bumpus authorization to try to get medical to provide me with medical bandages to take care of my own wound care since i am having to take care of my own wound care and nurse ashley disrespected me in front of several inmates which is dead wrong i asked to go t medical by the co and was told to go at bereakfast and when i got there i was told to leave and i have liquid just pouring out of my stomach and no way to control it i should not have to take care of my own wound and should be passed to medicasl to do so i do know if mrs hensley the hca was here this would not of happened but i must file this due to the disrespect nurse ashley conducted toward me stating i did this to myself that me bruing the bandage that just fell off to them was discussting and that i am nasty this needs to be addresses

*3/4/2022 10:36:24 AM : ( Julie Hensley ) wrote*
I talked to you about this and we have reached an agreement on how to handle your dressing change situation. we will continue to see you at 2:30 pm daily.

*3/4/2022 10:36:29 AM : ( Julie Hensley ) wrote*
Closed incarcerated individual form

| Ref# MANCI0222006015 | Housing:4B151B | Date Created:02/26/2022 |
|---|---|---|
| ID#: a764382 | Name:TIPTON,GARY | |
| Form:Informal Complaint | Subject:Health Care | Description:Unprofessional conduct |
| Urgent:No | Time left:n/a | Status:Closed |

Original Form
*2/26/2022 7:59:50 AM : ( a764382 ) wrote*
on or about the 26 day of febuary 2022 i went to mad per co bumpus authorization to try to get medical to provide me with medical bandages to take care of my own wound care since i am having to take care of my own wound care and nurse ashley disrespected me in front of several inmates which is dead wrong i asked to go t medical by the co and was told to go at bereakfast and when i got there i was told to leave and i have liquid just pouring out of my stomach and no way to control it i should not have to take care of my own wound and should be passed to medicasl to do so i do know if mrs hensley the hca was here this would not of happened but i must file this due to the disrespect nurse ashley conducted toward me stating i did this to myself that me bruing the bandage that just fell off to them was discussting and that i am nasty this needs to be addresses

Communications / Case Actions
*2/26/2022 7:59:50 AM : ( a764382 ) wrote*
Form has been submitted

*2/28/2022 7:41:55 AM : ( LISA BOOTH ) wrote*
You have filed duplicate ICR's simultaneously (MANCI0222006015 & MANCI0222006194) on the same topic. This concern will only be addressed under one of these case numbers. You may escalate the concern in which you receive a response from the Healthcare department (MANCI0222006194).
Refrain from filing multiple complaints surrounding the same incident as this is considered misuse of the grievance procedure.
Thank you.
Ms. Booth
ManCI IIS

*2/28/2022 7:42:00 AM : ( LISA BOOTH ) wrote*
Closed incarcerated individual form

\* HEALTH SERVICE REQUEST

APPENDIX
EXHIBIT # 6

12-6-22
DATE

GARY TIPTON #764382
RNCI
P.O BOX 120
LEBANON, OHIO 45036

## Health Services Request
### Petición Para Servicios de Salud

DRC 5373 (Rev. 08/07)

*Place This Slip In Medical Request Box Or Designated Area*
*Ponga en la Caja de Peticiónes Medicas en Area Designada*

Reviewed by:
Date Received:
Time Received: ___ a.m./p.m.

Date Of Request / Fecha: 3-5-22

Inmate Name / Nombre: Gary Tipton
Number / Numero: 764382
Housing Unit / Unidad: 4B

Request for:
- [x] Medical Care / Atención Medica
- [ ] Dental Care / Atención Dental
- [ ] Medication Re-order / Reordenar Medicación
- [ ] Medication Refill / Rellenar la Medicación

Nature of problem / Descripción del problema: I HAD TWO(2) SURGERIES LESS THAN A MONTH AGO. HUGE LUMP IS FORMING AT THE WOUND SITE LIKE IT IS A HERNIA. SOMETHING IS WRONG FROM THE SURGERIES. SEVERE ABDOMEN PAIN

---

## Health Services Request
### Petición Para Servicios de Salud

Reviewed by:
Date Received:
Time Received: ___ a.m./p.m.

Date Of Request / Fecha: 4-19-22

Inmate Name / Nombre: TIPTON
Number / Numero: 764382
Housing Unit / Unidad: 4B

Request for:
- [x] Medical Care / Atención Medica
- [ ] Dental Care / Atención Dental
- [ ] Medication Re-order / Reordenar Medicación
- [ ] Medication Refill / Rellenar la Medicación

Nature of problem / Descripción del problema: I PREVIOUSLY FILED A HSR BUT NOONE CALLED ME FOR SICKCALL. HOWEVER, HCA J. HENSLEY DID EXAMINE THE HERNIA A COUPLE WEEKS AGO, DURING A MEETING BUT IT IS GETTING WORSE AND BIGGER. I AM IN SEVERE PAIN.

*Place This Slip In Medical Request Box Or Designated Area*
*Ponga en la Caja de Peticiónes Medicas en Area Designada*

DRC 5373 (Rev. 08/07)

* MEDICAL RECORDS TO SUPPORT CLAIMS

APPENDIX
EXHIBIT # 7

12-6-22
DATE

GARY TIPTON # 764382
NCI
P. O BOX 120
LEBANON, OHIO 45036

**Mansfield - Correctional Institution**
1150 North Main Street   Mansfield, OH 44901
(419) 525-4455 Fax:

Page 3
Phone Note

## GARY TIPTON (A764382)
Male  DOB: 01/04/1983     1871503130

**New Orders:**
NSG- Wound Care / Dressing Change [NSG067]

## Wound Care
**Wound Description**
**Wound Location:** Midline Abdomen
**Wound bed color:** Red
**Drainage Amount:** Scant
**Drainage type:** Sero-Sang
**Periwound area:** Benign
**Eschar/Slough:** No
**Undermining:** No
**Tunneling:** Yes
   **Location:** 6 o'clock.
**Skin Temperature (Surrounding Wound):** Normal
**Skin Integrity:** Incision
**Wound/Skin Integrity:** Staples/Sutures Intact

**Wound Dressing Treatment**
**Wound cleansed**
   **Cleansed with:** Normal saline
**Wound Bed Dressing**
   **Wound Dressing:** Other
      **Other:** Wet to dry
**Dressing secured**
   **Covered with:** ABD
**Dressing secured**
   **Dressing:** Other
      **Other:** Abdominal binder
**Patient tolerated dressing procedure** Without complaints
**Comments:** Patient has 2 internal sutures visible, no s/sx of infection present at this time, internal tissue is beefy red and moist, appears to tunnel at inferior 6Oclock aspect of wound, patient denies any pain at this time

**Pain Scale**
**Level of Pain:**1    No Pain

Electronically signed by Jesse Glass-RN on 02/12/2022 at 4:02 PM
Electronically signed by Kendra Newland-CNP on 02/14/2022 at 8:19 AM

**Mansfield Correctional Institution**
1150 North Main Street   Mansfield, OH 44901
(419) 525-4455  Fax:

*March 18, 2022*
Page 3
Phone Note

## GARY TIPTON (A764382)
Male  DOB: 01/04/1983      1871503130

**New Orders:**
NSG- Wound Care / Dressing Change [NSG067]

## Wound Care
**Wound Description**
**Wound Location:**  Midline Abdomen
**Wound bed color:**  Red
**Drainage Amount:**  Scant
**Drainage type:**  Sero-Sang
**Periwound area:**  Benign
**Eschar/Slough:** No
**Undermining:**  No
**Tunneling:**  Yes
    **Location:**  6 o'clock.
**Skin Temperature (Surrounding Wound):**  Normal
**Skin Integrity:**  Incision
**Wound/Skin Integrity:**  Staples/Sutures Intact

**Wound Dressing Treatment**
**Wound cleansed**
    **Cleansed with:**  Normal saline
**Wound Bed Dressing**
    **Wound Dressing:** Other
        **Other:**  Wet to dry
**Dressing secured**
    **Covered with:**  ABD
**Dressing secured**
    **Dressing:** Other
        **Other:**  Abdominal binder
**Patient tolerated dressing procedure**  Without complaints
**Comments:**  Patient has 2 internal sutures visible, no s/sx of infection present at this time, internal tissue is beefy red and moist, appears to tunnel at inferior 6Oclock aspect of wound, patient denies any pain at this time

**Pain Scale**
**Level of Pain:**1    No Pain

**Electronically signed by Jesse Glass-RN on 02/12/2022 at 4:02 PM**
**Electronically signed by Kendra Newland-CNP on 02/14/2022 at 8:19 AM**

**Lake Erie Correctional Institution**
501 Thompson Road  Conneaut, OH 44030
(440) 599-4100  Fax:

*March 26, 2021*
Page 1244
MH SOAP

**GARY TIPTON (A764382)**
Male  DOB: 01/04/1983     1871503130

## NSG-NSC Abdominal Complaints Subjective and Objective

**Patient Complaint:**   Patient advised history of vomitting x several months approx. 2x/day unwittnessed. Advised Prilosec has helped with the GERD but not the vomitting advised patient he may need moved to a cell to monitor for the issues of vomitting??   Patient declined this option Denied any foods or activities that make the vommintting more frequent. Also complained of abdominla pain with the vomitting again denied noticing anything that makes the pain more frequent.

### Significant Medical History
Nausea / Vomiting
Heartburn / Reflux
**Last Bowel Movement** 03/07/2021
**Are you in pain?** Yes

### Objective Findings

### Cardiovascular
**Rhythm** Regular
**Edema:** No

### Respiratory
**Cough:** No

### Gastrointestinal
**Appetite:** Fair
**Vomiting:** Yes
**Elaborate:** 2x/day for months
**Nausea:** Yes
**Elaborate:** Daily for months
**Bowel Movements:** Regular
**Abdomen:** Soft

### Assessment:
**Nursing Diagnosis:** Altered nutrition less than body requirements R/T nausea/vomiting/diarrhea
**Nursing Interventions:** Increase fluid intake

### Disposition

### Pain Assessment
**Are you currently experiencing any pain?** Yes

### Location #1

Report run by Kayla Lexso-Med Rec Clerk